Case number 15-1791, United States of America v. Dionte Jones. Oral argument not to exceed 15 minutes per side. Stephanie Gorgon, for the appellant, you may proceed. Thank you. May it please the Court, Stephanie Gorgon for the United States. With your permission, I'd like to reserve three minutes for rebuttal. Sure. When properly reviewing a search warrant, a court does two things. First, it pays great deference to the magistrate judge's probable cause determination, and it looks at all the information within the four corners of the affidavit. And when we do that here, we will find that the magistrate judge had a substantial basis to issue this warrant to find that it's more likely than not that evidence or contraband would be in the target house. Here, the affidavit showed not only that an informant said cocaine sales were occurring out of the target house, but also that this had been confirmed by a controlled purchase of cocaine where the seller left that target house in a vehicle also registered to that target house in order to do the cocaine sale. So under the deferential review, and considering all the evidence in the affidavit together, the magistrate judge had a substantial basis to find probable cause. Now, the district court here did not so conclude. That's because the district court didn't afford the magistrate judge that deferential review and didn't look at everything in the affidavit. Specifically, what was overlooked here was that controlled purchase. Well, before you get into the controlled purchase, I just want to go back fundamentally and ask you, looking at the four corners of the affidavit, without the information from the confidential informant, do you argue that that search warrant would have been sufficient or that it provided for probable cause absent the confidential informant's statement? I think so, Your Honor, because of the controlled purchase. You're asking if there's only one controlled purchase, but no informant kind of adding some context to that controlled purchase. I acknowledge it wouldn't be as good, but because the test here is just we're dealing in probabilities and not certainties or a prima facie case, I think that probably would be enough. And the government didn't cite this case, but in Henry, an unpublished decision of this court, they found that one controlled purchase was sufficient for probable cause and rejected any kind of hyper-technical reading of the affidavit, just as this court did on Bonk and Allen. And the cite for Henry is 299F Appendix 44. Are we permitted to rely on unpublished opinions? Oh, no. No, Your Honor. We don't like to in the Third Circuit either. Yeah, and to the extent that even case comparison is helpful, right, because really that's kind of the argument my colleague makes is, well, test this affidavit against other affidavits in other cases, and I'm not sure that that's even helpful, but for what it's worth. Did Mr. Korn know you're going to be citing this Henry case today? No, I don't think so, Your Honor. Well, then I'm a little leery of getting into it too much because he wasn't given the chance. And that's my only point from Henry anyway. Now, the district court's analysis, though, because it overlooked the controlled purchase, focused instead and treated it as if this whole warrant, the magistrate judge's decision, rose and fell on the reliability of the informant's information, focused instead on the fact that the affidavit didn't have kind of a history with the informant. In fact, the district court actually went outside the four corners of the affidavit and referred to hearing testimony. Page 222 of the record, you can see the district court said, well, you know, the agent who was also the affiant who testified at the hearing said, this confidential informant he'd only met with twice. What is the purpose of a hearing, I guess, if the district judge is not allowed to consider any of that testimony, which is the implication of what you just said? Right. And they're not legally. The reason there was a hearing where evidence was taken was that at the same time that the defendant filed a motion to suppress evidence from the search warrant, he also filed a motion to suppress statements alleging a Miranda violation. And so the hearing at the outset was supposed to be both on the legal question of the sufficiency of the affidavit and also to get information about the circumstances of the statements. So you're saying, I presume we have a case law that says the district court, in determining probable cause, looks only to the four corners. That's correct, Your Honor. And that she made a mistake here in considering, I guess it was the agent's testimony. That's correct. And it was not just a legal mistake to kind of go outside those four corners. It was actually a factual mistake, I think just an error of memory, because if you look at 138 of the record during the testimony, what he had actually said was, I've known the informant for over two years, and at least two search warrants had come out of my relationship with this informant. It's not that I've only met him ever twice. So that was another mistake. So with respect to the affidavit again, the magistrate judge has to satisfy him or herself about the sufficiency of the affidavit, and the magistrate judge has a legal obligation, doesn't the judge, to test out through questioning the information contained in that affidavit, which may very well lead to other information. Is that right? That the issuing magistrate should? Right, right. I mean, for example, you get a lot of affidavits that says from the informant that, you know, they give the address of the place, and they say that the person inside is known to them. They've been inside. They've seen the person storing, selling, or whatever of the contraband in the apartment. And there may not be a lot of other detail in that statement, so doesn't the judge have to ask questions to develop to their satisfaction that this is sufficient to find probable cause and to test out the officer? Well, I struggle a little bit with the question because there are cases. I'm asking you that because you seem to take issue with the fact that the judge considers something, as you say, outside of the four corners. And I'm trying to find out where is the error that you see in that, given the judge's function of not just taking blindly the affidavit, looking at that, and then, you know, stamping or rejecting it. Okay, so I think I get it. And the issuing magistrate judge has a different function than the district court, right? And so here, the issuing magistrate judge, the Supreme Court has instructed issuing magistrates to not act as legal technicians, but to act as reasonable people, applying a flexible and easy-to-apply probable cause standard. And so because that's what their task is to do, is to not really even so much be a legal technician, but a common-sense person, right, then when the district court reviews that decision, they're asked to apply a deferential review of that decision. It's a common-sense, probability-based decision, more likely than not. And so whereas I think there are instances where an agent or a police officer might bring an affidavit to the issuing magistrate and say, this is what I have, will you make a probable cause determination? I think you're right, Judge Donald, that practically speaking, there are times that they're like, this isn't enough, go get more. And they do, and they come back with a revised affidavit. But once we get to the review process, now the question is just, within those four corners, right, did you have a substantial basis to make that determination? That's why it's not de novo review of the issuing magistrate's decision. And so my colleague has raised a hypothetical in briefing, which is, well, what if the seller described in this affidavit was just a casual visitor to the home? You know, that seems kind of unfair, I guess, to the house, right? The house could be innocent. But here again, factually, that doesn't really square with what is in the affidavit, which says that the seller traveled in a car registered to the house. That implies a kind of comfort and dominion or control of the house, plus you have an informant saying cocaine is being sold from that house. And the seller had cocaine. And the seller had cocaine. That's right, Your Honor. And cocaine was recovered. That's another thing that's kind of not really mentioned in the analysis. That really corroborates within the affidavit what the informant has said. That's right. That's right. And so when my colleague points to other cases where there are other cases, you're going to look at other affidavits where there's a lot more information about the informant's past. But often those cases don't have a corroboration from a controlled purchase of the cocaine, something so clearly verifying the informant. And so you don't have to have all of it. You just have to have enough for the magistrate judge to have tested what the informant said. Like, okay, I see enough within these four corners to believe this person. Okay. Right. So unless the court has any further questions, I'll yield the rest of my time. Very well. Thank you. Mr. Korn. Thank you. Good morning, Your Honors. Let me begin by just addressing an issue that the government raised in its brief that I think is incorrect, and that is that the government, in its reply brief, states that there were three issues that I raised for the first time on appeal. And I don't want to belabor the issue, but that statement is just incorrect. If the court looks at the brief that I submitted, page 3 and 4 of the brief that I submitted, with the motion that was filed, the motion to suppress that was filed in the district court, and if the court looks at pages 10 through 12 of the transcript of the motion to suppress, the court will see that all the issues that were raised in my appellate brief were addressed to the district court. And you're the appellant anyway. And I was going to say, I'm not even sure. I'm the appellee. I'm not even sure that's accurate when I'm responding to the arguments of the appellant. Mr. Korn. Yes. It seems like there are two difficulties with the district court's position. First, as Judge Roth just pointed out, the fact that Mr. Jones comes out of this house, goes directly to a drug deal where he sold cocaine, would seem to corroborate the informant's tip that this same person was selling cocaine out of that house. Why doesn't that just make sense as a matter of common sense? First of all, I realize that the judge, in her opinion, when she suppressed the evidence, does somewhat obscure the line. Well, let's forget about the district court. Sure. This is a matter of common sense. Right. Why isn't that strong corroboration? And I will answer that question. My understanding is that the judge is limited to the four corners in review, the four corners of the affidavit. In the affidavit, it doesn't say that Mr. Jones left this house. The affidavit states that, observed a male black MB suspect leave said residence just prior to the controlled purchase in a Chevrolet SUV, black in color, bearing Michigan registration, such and such. Said vehicle is registered to a Sharon Jones of 1612 Coatman Boulevard, City of Flint. There is nothing in the affidavit from which it could be inferred that this black male was a resident of 1612 Coatman. We don't even really know, based on the investigation of the police, we don't even really know that Sharon Jones was a resident there. Let me stop you there. Sure. Most people who come over for lunch don't drive off in a vehicle registered to somebody at that residence. So if I go to my friend's house for lunch, I usually don't drive home in his car, get in his car and leave. So the fact that he comes out of 1612 Coatman, gets into a vehicle registered at 1612 Coatman, suggests that he is not just a casual visitor, but has some substantial connection to that residence. Now, this is not beyond a reasonable doubt. So again, why is that not a common sense inference that he has some substantial connection to that residence? And I think that certainly is a legitimate concern. But again, you have to go back to the information that's within the affidavit. All of that is in the affidavit. All of it. Absolutely. But what we don't know is that this black male ever returned to that residence. And yes, there are times where I have lent my car to people who were at my house. We do not know, based on the information in the affidavit, who that black male was. Does it matter if he never returned to the residence? What the confidential informant is saying is that D is selling drugs from that residence. The confidential informant sets up a controlled buy with D. D comes out of the residence, goes to the controlled buy with drugs. Now, that would seem to be pretty compelling evidence that he is selling drugs from that address. What we have, and again, that's a legitimate concern, but again, in the affidavit, what we have in the affidavit is that this confidential informant says that drugs are being sold out of this address and other places in Flint. First of all, we don't know where. Let's concern. We're just talking. Right. Why isn't that highly probative that the informant is correct that D is selling drugs out of the residence and that Mr. Jones is D? Well, sure. Why doesn't that support probable cause? For several reasons. One is that we don't know anything about why the affiant considers the confidential informant reliable and credible. Zero. Here's the fundamental problem. Right. Why doesn't the actions of Mr. Jones that are observed firsthand by the officer, why don't those, as Judge Roth has suggested, totally corroborate the tip? Who cares about any other corroboration? And that's a good question. But the answer is that we do not know that the drugs were coming from the house. We do not know that the person who left the house. Are you implying here? No. If I may, yes, there is. He comes out of the house and he's got the drugs. He goes straight away to a drug deal. He goes straight away to a drug deal and sells cocaine. We do not know that he has. The confidential informant has been searched prior to the meeting with D, so we know that the confidential informant did not have drugs on him at the time that he first met with D. Absolutely. And I am not saying that the drug transaction did not take place. There is no question in my mind that based on the information in the affidavit that the drug transaction took place. The problem is the magistrate is making the inference that the drugs came from the residence that eventually was searched. Because the person who sold the drugs exited that residence in that series of events, exited the residence, went to the car, went to the designated location, sold the drugs. That's why the magistrate is making that inference. That is correct. But based on the information in the affidavit, we do not know what happened after that person left the house. We do not know whether he stopped someplace else to get... Why is that relevant, though, that we don't know what happened after he left the house? Because that's relevant to the inference whether drugs are located in the house. That's why it's important that we don't know whether this person ever returned to the house. First of all, we don't know that this person was a resident of the house. Second of all, we don't know what this person did when he... Is residency, though, really the requirement? No. Because you have cases all over the place where people are operating stash houses where they have a transaction point. They don't reside there, but they have control and a connection to that location. So I'm not sure why we keep talking about residence. Residency is not critical. Residency is only important to whether or not the magistrate can infer, and that's really what this case is about. Can the magistrate infer from the fact that a male, a black male, left the house that was the subject of the search warrant? We do not know where he picked up the drugs. We don't know that he got the drugs out of the house. There was nothing in the affidavit. Granted, the affidavit doesn't affirmatively say... I mean, it says he comes out of the house and he goes to the drug deal. It doesn't say, and moreover, he didn't stop anywhere. Well, the agents did follow the vehicle from the house to the location of the controlled buy, so he didn't stop anywhere. Well, again, we don't know. That information is not in the affidavit. So your point is he might have had the drugs prior to getting to the... The information from the affidavit says we followed him, but it doesn't go into the details of what he did. And, again, if we don't know that he ever returned to that house, then we don't know that that house is being used as some kind of stash for drugs. That's why it's critical. It's not the residency. If he was definitely a resident and you knew he was a resident, then you could infer, okay, he's probably storing drugs at his home. But we don't know that this is his home, and we don't know that he ever came back. And if he never came back, there's a very good chance that that's not where the drugs were stashed. The only critical decision for the magistrate is looking at the totality of the circumstances. Is there probable cause to believe that drugs would be located in that house? I think you're just arguing based on a standard different than the one we have to apply here. Probable cause. Is there a fair probability? That is correct. Fair probability. And that's the magistrate's determination, and then we review that deferentially. And our question is, did the magistrate act arbitrarily in saying there was a fair probability? I mean, what you're saying now might be a good jury argument that there wasn't, that the prosecution hasn't proved beyond a reasonable doubt. But when you say we don't know this or that, and it's not definitely this or that, that's just not the test. It's not the test. And I understand that the reviewing court, and this court, it's my understanding this court reviews the decision as to whether or not the affidavit is sufficient and whether or not the good faith exception should apply de novo. That's really a de novo decision for this court. And it would be, and the United States Supreme Court has made it very clear that there's a limit. We have to give deference to the magistrate, but there is a limit. And it would be my position that this affidavit in itself is so deficient because, you know, first of all, again, we don't know why the affiant thinks that the confidential informant is reliable. That's not fatal. Nothing is fatal when you look at the totality of the circumstances. Gates was an anonymous tip. Traper was an anonymous tip. It's not fatal if there is extensive investigation. Here, all they did was they surveyed the house. They saw this person leave the house, go to the control by, and sell cocaine. And that is it. That's a big thing. I'm sorry. That's okay. I mean, cases about tips, that usually involves the officers going and doing the search just based on the tip, not some surveillance that observes drug activity after the tip. So this case is really different from those. And so rather than have things that happen before the tip show that the guy is reliable, you know, on 10 bus with this guy, we have something after the tip that shows it's reliable. And it's a significant thing. And, again, we don't know what the tip is. He says drugs are being sold out of this house and other places in Flint. We don't know where he got that information from. We don't know if when he told the affiant, if at all, that drugs were being sold out of this residence. He never says he's been inside and seen drugs being sold or stored or anything like that. Exactly. There's none of that. And if you look at the other cases, that's what they focus on. The other cases are different in kind, for the reason I just said. The other cases don't have the officer observing somebody come out of the residence and go straight away and sell cocaine. This case is just totally different in that respect. And I would have to say that, you know, if you go back and look at the other cases and look at the extent of the investigation, where it was just a tip, the investigation was, in several of the other cases, the investigation was so much more thorough than what you had in this case. And I'd have to go back. I've got a list of cases. But the cases that I'm thinking of, there's usually more than one by. They've staked out the house, or the confidential informant gives them specific information about where in the house the drugs were located. They get information. They observe the house. They see who goes in and who goes out of the house. They get information about who resides at the house. All they did in this case is watch the person leave the house. And again, they don't even know that he ever came back. All they do is watch the person leave the house and go to a controlled by. They know that the car he was driving is registered to a Sharon Jones at that address, but they never did any investigation to establish that she really does reside at that address. All right, well, that's a fair point. Any further questions? No. All right, thank you, sir. Thank you. Thank you. Just briefly, Your Honors. In paragraphs, as Judge Roth pointed out, paragraphs 9 and 10 of the affidavit, you will see that there was continued surveillance, not just on the confidential informant, but on the suspect from the house to the controlled purchase. My colleague criticizes this affidavit because it could have been stronger. And I have to say, yes, any affidavit really could be stronger. But what my colleague is asking this court to do is to review this affidavit very grudgingly, and that's something that the Supreme Court has expressly rejected in Gates and that this court, sitting on Bonk, did in Allen as well. So because the district court reached the wrong conclusion in this case and the magistrate judge who issued this warrant did not act arbitrarily, we do ask that the court reverse the suppression order. Thank you. Very well. Thank you. The case will be submitted.